Charles W. Woodward, IV, OSB No. 165001
London & Paris LLP
66 Club Rd., Ste. 200
Eugene, OR 97402
Tel: 971.206.4384
charles@londonparislaw.com
*Of Attorneys for Plaintiff*

# THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| KIMBERLY JOHNS, an individual,<br><br>                Plaintiff,<br><br>   v.<br><br>NESTUCCA VALLEY SCHOOL DISTRICT, a public body, MISTY WHARTON, an individual, BRIAN HOOGENDIJK, an individual, DANIELA MORENO GUTIERREZ, an individual, KENNETH RICHWINE, and individual, and CHRISTAL WINESBURGH, an individual,<br><br>                Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Case No.:<br><br>Judge: |

COMES NOW, KIMBERLY JOHNS ("Plaintiff"), who hereby alleges the following against NESTUCCA VALLEY SCHOOL DISTRICT, MISTY WHARTON, BRIAN HOOGENDIJK, DANIELA MORENO GUTIERREZ, KENNETH RICHWINE, and CHRISTAL WINESBURGH (collectively, "Defendants"):

## NATURE OF THE ACTION

1. This action arises out of Defendants' actions and omissions surrounding an incident with Plaintiff's daughter involving Nestucca High School employees/agents and NVSD sanctioned actions of those employees off-campus. Additional actions and omissions by Defendants following the original incident also form the basis for this action. Plaintiff does not

Page 1 – COMPLAINT

waive or limit the other remedies to which it is entitled under both federal and Oregon state law, and Plaintiff expressly reserves the right to amend and seek additional and/or alternate remedies at a later date.

## PARTIES, JURISDICTION, AND VENUE

2. At all times material herein, Plaintiff Kimberly Johns is an individual resident of the state of Oregon.

3. At all times material herein, Defendant Nestucca Valley School District ("Defendant NVSD" ) was a school district duly organized under the laws of the state of Oregon, and said District is wholly located in Tillamook County, state of Oregon. Defendant NVSD includes Nestucca High School ("NHS") which is located in the City of Cloverdale, Tillamook County.

4. At all times material herein, Defendant Misty Wharton ("Defendant Wharton") is an individual resident of the state of Oregon and an employee and/or agent of Defendant NVSD.

5. At all times material herein, Defendant Brain Hoogendijk ("Defendant Hoogendijk") is an individual resident of the state of Oregon and was an employee and/or agent of Defendant NVSD.

6. At all times material herein, Defendant Daniela Moreno Gutierrez ("Defendant Gutierrez") is an individual resident of the state of Oregon and was an employee and/or agent of Defendant NVSD.

7. At all times material herein, Defendant Kenneth Richwine ("Defendant Richwine") is an individual resident of the state of Oregon and was an employee and/or agent of Defendant NVSD.

8. At all times material herein, Defendant Christal Winesburgh ("Defendant Winesburgh") is an individual resident of the state of Oregon and was an employee and/or agent of Defendant NVSD.

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because Plaintiff herein alleges the deprivation of rights and privileges secured by the U.S. Constitution under 42 U.S.C. §1983.

10. Supplemental jurisdiction over Plaintiff's state law claims is proper in this Court pursuant to 28 U.S.C. §1367(a) in that Plaintiff's state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

11. Venue is appropriate in this court because the Defendants are residents of the State of Oregon, and the events or omissions giving rise to the claim occurred in Tillamook County, Oregon.  8 U.S.C. §1391(a)-(b)(1),(2); LR 3-2(b).

## GENERAL ALLEGATIONS

12. Plaintiff 's daughter, Aggie Johns ("AJ"), is now an adult individual but was an unemancipated minor female, born in 2006, at the time of the incidents described herein.

13. AJ was enrolled as a senior at NHS during the 2023-24 school year.

14. Plaintiff was awarded custody of AJ on December 5, 2022, as demonstrated by the Supplemental Judgment Modifying a Domestic Relations Judgment and Money award (Stipulated) ("Custody Judgment").  *See* Exhibit A.

15. The Custody Judgement was provided to Alex Croke, the office clerk at NHS on or about December 6, 2022.  Therefore, Defendants knew that Plaintiff was the custodial parent of AJ.

16. On January 22, 2024, after school, AJ informed Plaintiff that she no longer felt safe around Plaintiff, later explaining that she did not feel safe "sharing her feelings."

17. On January 22, 2024, Plaintiff allowed AJ to leave the family home with two of her classmates with the understanding that AJ would be staying with a particular friend that night.

18. On January 23, 2024, two NVSD employees, Defendant Hoogendijk and Defendant Gutierrez, went to Plaintiff's house in an NVSD vehicle without Plaintiff's approval ("NVSD Visit").

19. On information and belief, Defendants ordered Defendant Hoogendijk and Defendant Gutierrez to take and entice AJ to leave the custody of Plaintiff.

20. During the NVSD Visit, AJ also arrived at the property, returning a vehicle belonging to Plaintiff.

21. During the NVSD Visit, Defendant Hoogendijk enters Plaintiff's home and removes some of AJ's belongings.

22. Defendant Hoogendijk and Defendant Gutierrez then drove away with AJ in the NVSD vehicle to an undisclosed location ("NVSD Taking").

23. When the NVSD employees took AJ, she blocked her location on her phone such that Plaintiff no longer had the ability to know where AJ, or at least AJ's phone, was located.

24. On January 24, 2024, around 8:36 a.m., Plaintiff called and left a voicemail for the school superintendent, Defendant Wharton, because Plaintiff did not know where the NVSD employees had taken AJ.

25. On January 24, 2024, around 9:00 a.m., Plaintiff called the Oregon Elderly Abuse Hotline because Plaintiff did not know where the NVSD employees had taken AJ, reporting that AJ had been removed from his home by a public agency other than the Oregon Department of Human Services ("DHS") or law enforcement.

26. On January 24, 2024, around 12:10 p.m., Plaintiff filed a report with the Tillamook County Sheriff's Office ("TCSO"), and Deputy Berg followed up stating that he would gather information and get back to Plaintiff.

27. On January 24, 2024, around 5:16 p.m., Plaintiff called the non-emergency 911 line to report AJ missing and to upgrade the previously filed report to runaway status.

28. On January 25, 2024, around 11:00 a.m., Plaintiff received a call from Detective Kris Wood ("Det. Wood") from the TCSO stating that Det. Wood would call Defendant Wharton and call Plaintiff back.

29. On January 25, 2024, around 1:52 p.m., Det. Wood called Plaintiff stating that:

Page 4 – COMPLAINT

      a. Defendant Wharton was still trying to catch up and had asked Det. Wood to act as intermediary;

      b. DHS case worker Andrea Wanitschek ("Wanitschek") would be calling Plaintiff;

      c. Defendant Richwine ("Richwine") would be calling Plaintiff; and,

      d. Defendant Wharton was unaware of the "incident."

30. On January 25, 2024, around 2:35 p.m., Plaintiff received a call from Defendant Richwine who declined to provide Plaintiff AJ's location nor whether AJ was in school that day.

31. On January 26, 2024, around 10:18 a.m., Plaintiff called Wanitschek leaving a voicemail explaining that Plaintiff still did not know where AJ was located.

32. On January 26, 2024, around 10:28 a.m., Plaintiff left Det. Wood a message requesting a return call.

33. On January 26, 2024, around 10:34 a.m., Det. Wood called Plaintiff stating that he would not be in that day and that "Det. Michelle" would be returning his call.

34. On January 26, 2024, around 11:35 a.m., Deputy Martinez from TCSO called Plaintiff stating that he had spoken with Wanitschek who would be calling Plaintiff shortly.

35. On January 26, 20224 around 12:00 p.m., Plaintiff called the Federal Bureau of Investigation to file a kidnapping report.

36. On January 26, 2024, around 12:26 p.m., Wanitschek called Plaintiff ("Wanitschek Call") stating that Wanitschek had spoked with AJ and Defendant Winesburgh, a NHS teacher.

37. During the Wanitschek Call, Wanitschek provided Plaintiff with Defendant Winesburgh's address, stating that AJ was staying with Defendant Winesburgh and that both AJ and Defendant Winesburgh were instructed to call Plaintiff to provide AJ's location and a plan for her future location.

38. Neither AJ nor Defendant Winesburgh called Plaintiff as required.

Page 5 – COMPLAINT

39. On January 26, 2024, around 7:53 p.m., Plaintiff's sister went to a NHS basketball game where she confronted AJ and a friend, Maxwell Arnis ("Arnis"), as well as speaking with Defendant Wharton and Defendant Winesburgh.

40. During the conversation at the basketball game, Defendant Wharton told Plaintiff's sister that school officials had spoken with AJ's non-custodial parent and arranged for Arnis to transport AJ to the non-custodial parent for visitation.

41. On January 26, 2024, around 9:49 p.m., a Deputy from TCSO spoke with Plaintiff ("Deputy Call") asserting that the parenting plan for AJ allows for weekend visitation to the non-custodial parent.

42. During the Deputy Call, Plaintiff responds that the parenting plan only allows for AJ to drive herself or for the parents to meet halfway, there are no provisions for NVSD staff to coordinate with the non-custodial parent for anything regarding AJ, especially transportation and lodging without the knowledge and consent of Plaintiff.

43. Having failed to find resolution directly with NVSD and Defendant Wharton, on or about January 29, 2024, Plaintiff filed complaints with the Teacher Standards and Practices Commission ("TSPC") against Defendant Hoogendijk, Defendant Winesburgh, and Defendant Gutierrez ("TSPC Complaints").

44. On or about January 31, 2024, the DHS completed the investigation of the NVSD Taking and the subsequent Actions by Defendants described above ("NVSD Custodial Interference"), concluding in the Report ("DHS Report") that when AJ stated the she felt "unsafe" around Plaintiff, she was referring to feeling unsafe to "share her feelings," that AJ was never in any danger of neglect or abuse, and that no threat to her safety existed nor was there a threat to her safety in the immediate future.

45. On February 22, 2024, Defendant NVSD, through a letter sent by Defendant Wharton, sent Plaintiff a 'No Trespass Order' revoking his volunteer clearance for coaching, prohibiting Plaintiff from attending any NVSD events, and prohibiting Plaintiff from entering upon the premises of any NVSD property ("No Trespass Letter").

46. The No Trespass Letter stated that the decision had been made "in consultation with the Tillamook County Sheriffs[sic] Office."

47. The No Trespass Letter stated that Plaintiff 's volunteer coaching had not been approved by the Defendants NVSD and Wharton.

48. Plaintiff, though counsel, provided evidence of Defendant NVSD's and Wharton's approval of Plaintiff for volunteer coaching in a response letter dated December 5, 2024 ("Rebuttal Letter").

49. Despite the clear evidence provide in the Rebuttal Letter, Defendants NVSD and Wharton continue to prohibit Plaintiff from volunteer coaching with the NHS Football Team.

50. On March 12, 2024, Plaintiff filed a Discrimination Complaint with the Northwest Regional Service District ("NRESD") against Defendant Richwine and Defendant Wharton regarding the NVSD Custodial Interference.

51. Plaintiff's NRESD complaint and the TSPC Complaints provided notice to the Defendants that tort claims would be brought against them pursuant to ORS 30.275(6) for the Defendants' actions and omissions occurring during the NVSD Custodial Interference.

52. On June 6, 2024, the NRESD issued their final report on the complaint filed by Plaintiff ("NRESD Report").

53. The NRESD Report summarized that the issues leading to the No Trespass Letter likely resulted from a series of miscommunications between NVSD employees and Plaintiff, and that NVSD and Plaintiff should work together to resolve the issues such that Plaintiff could attend the high school graduation, AJ's graduation.

54. The Nestucca High School graduation, the ceremony where AJ graduated, was held on June 7, 2024.

55. The NRESD Report was not provided to Plaintiff until August 29, 2024, not through the NSVD (the entity required to provide the findings), but through NRESD after Plaintiff made repeated inquiries as to the status of the investigation and requests for the final report.

56. On April 17, 2025, a Tort Claims Notice Letter was sent to the acting attorney for Defendant NVSD regarding the potential claims related to the Defendants' failure to act according to the ultimate findings stated in the NRESD Report that resulted in Plaintiff missing his daughter's graduation from high school, a once in a lifetime event.

57. From October 18, 2021, until February 22, 2024, Plaintiff was a volunteer football coach with the Nestucca High School football programs.

58. Plaintiff had a storied career as a kicker on the Oregon State University Football Team, resulting in invitations to try out for Dallas Cowboys and New England Patriots of the National Football League.

59. Plaintiff coached multiple students on the NHS Football Team to All-Regional Awards for kicking.

60. In November 2022, the NVSD reached a settlement with a former teacher after a Bureau of Labor and Industries investigation found that NVSD leadership, including Defendant Wharton—who was directly involved in the incidents, failed to take corrective action when the harassment was brought to their attention and violating the NVSD's policies. *See* https://www.tillamookheadlightherald.com/news/nestucca-school-district-pays-six-figure-settlement-to-former-teacher/article_e5268a98-540f-11ee-a7b6-e7a28725d6a9.html.

61. On or about May 9, 2024, Defendant Hoogendijk was charged with eight (8) counts of sexual abuse of a minor who was a student of his at NHS.

62. Defendants NVSD and Wharton failed to properly vet Defendant Hoogendijk before hiring, leading to the NVSD allowing Defendant Hoogendijk to be in custody of AJ during parts of the NVSD Custodial Interference.

63. Defendants NVSD and Wharton also hired David Michael Brandon in 2019, who was indicted on five (5) counts of rape, nine (9) counts of sexual abuse in the third degree, and four (4) counts of unlawful delivery of a marijuana item in connection with one of his female freshman students. *See, e.g.,* https://dailyastorian.com/2023/03/29/former-teacher-sentenced-for-sex-crimes/ (description of the case involving a child at Jewell School).

Page 8 – COMPLAINT

64. Defendants NVSD and Wharton also hired Chelsea Hill, who forced the mother of a 12-year old child in her care to obtain a stalking order, which the Defendants NVSD and Wharton refused to enforce, with the child eventually transferring out of the district out of continuing concerns for the child's safety. *See,* https://www.northwestobserver.com/index.php.

65. Defendants NVSD and Wharton also allowed Russ Sanders, who was arrested for the rape of a minor out of state, to volunteer with the NVSD's reading program, based on a state background check (rather than utilizing the national background check to protect students).

66. As an entity under the state laws of Oregon, NVSD is a state actor.

67. As employees and/or agents of NVSD, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh acting within the scope of their employment are state actors.

## FIRST CAUSE OF ACTION

(Custodial Interference – ORS 30.868 – All Defendants)

68. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

69. Pursuant to ORS 30.868(1)(b)(A), Plaintiff is entitled to damages related to Defendants' custodial interference as Plaintiff's custodial rights were interfered with and Plaintiff, in good faith, reported AJ missing to the authorities.

70. Defendants knew that Plaintiff was AJ's custodial parent given Defendants' receipt of the Custody Judgment.

71. Defendants knew, or had good reason to know, that they did not have a legal right to take, entice, or keep AJ from Plaintiff.

72. Defendants interfered with Plaintiff's custodial rights when taking enticing and/or keeping AJ from Plaintiff, when failing to keep Plaintiff apprised of AJ's location, and when Defendants reached out to the non-custodial parent for guidance concerning AJ.

73. Defendants' acts and omissions caused AJ to be taken, enticed, or kept from Plaintiff, the lawful custodian, in violation of ORS 163.257(1)(a).

Page 9 – COMPLAINT

74. Plaintiff is entitled to recovery of special and general damages, including damages for emotional distress, under ORS 30.868(9)(a), because of Defendants' acts and omissions.

75. Defendants' acts and omissions caused Plaintiff severe emotional and physical distress. The injuries to Plaintiff caused by Defendants, by and through their extreme and outrageous conduct (here, custodial interference), was foreseeable and intentional.

76. Plaintiff is entitled to an award of punitive damages, under ORS 30.868(9)(b), because of Defendants' reckless and outrageous acts and omissions demonstrating a conscious indifference to the health, safety, and welfare of Plaintiff.

77. Defendants' acts and omissions were especially reckless and outrageous considering that the only "safety concern" for AJ was the lack of feeling safe to share her feelings, as described in the DHS Report.

78. Given that the only safety concern regarding AJ was for her ability to share her feelings, as opposed to her physical safety and well-being, Defendants have no justification for their acts and omissions constituting custodial interference.

79. Additionally, Defendants are not the agency or entity that has been delegated the function of safe guarding a minor students' safety outside of school functions as that authority and responsibility lies with DHS and local law enforcement, entities actually trained for such situations.

80. Defendants acts and omissions went beyond mere carelessness to a willful or reckless disregard of risk of harm to Plaintiff to a magnitude evincing a high degree of social irresponsibility.

81. In this case, punitive damages are appropriate given:
    a. Defendants knew or should have known about Defendant Hoogendijk's criminal tendencies for sexual abuse of minors through their hiring practices;
    b. Defendants acts and omissions were not predicated on an actual physical safety concern for AJ;

  c. Defendants used their position of authority and trust to take, entice, and keep AJ from Plaintiff's custody;

  d. Defendants exceeded their training and authority to take, entice, and keep AJ from Plaintiff's custody;

  e. Any combination of (a)-(d) or all of (a)-(d).

82. Plaintiff is entitled to recover reasonable attorney fees incurred in this action, under ORS 30.868(10).

83. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were employees and/or actual agents of Defendant NVSD.

84. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were working within the course and scope of their employment and/or actual agency.

85. Defendant NVSD is liable to Plaintiff for the actions of its employees and/or actual agents Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh.

86. As a result of Defendants' acts and omissions, Plaintiff was subjected to severe mental or emotional distress, extreme humiliation, embarrassment, and other highly unpleasant mental or emotional reactions over a prolonged period of time that continues, which has caused and continues to caused non-economic damages in the amount of $250,000.00 or an amount to be proven at trial.

## SECOND CAUSE OF ACTION

(Intentional Infliction of Emotional Distress – All Defendants)

87. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

88. Defendants intended to inflict severe mental and emotional distress, or such distress was certain or substantially certain to result from Defendants' conduct, specifically the NVSD Custodial Interference and the continued prohibition on volunteer coaching.

Page 11 – COMPLAINT

89. By failing to act to allow Plaintiff to attend his daughter's once in a lifetime event, her high school graduation, by continuing to keep Plaintiff from volunteer coaching the football team, and through the above-described custodial interference, Defendants in fact caused Plaintiff severe mental or emotional distress.

90. The Defendants' acts and omissions were (and are) extreme and outrageous, consisting of extraordinary transgressions of the bounds of socially tolerable conduct and far exceeded, and continues to exceed, the reasonable limits of social toleration.

91. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were employees and/or actual agents of Defendant NVSD.

92. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were working within the course and scope of their employment and/or actual agency.

93. Defendant NVSD is liable to Plaintiff for the actions of its employees and/or actual agents Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh.

94. As a result of Defendants' acts and omissions, Plaintiff was subjected to severe mental or emotional distress, extreme humiliation, embarrassment, and other highly unpleasant mental or emotional reactions over a prolonged period of time that continues, which has caused and continues to caused non-economic damages in the amount of $250,000.00 or an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

(Negligent Infliction of Emotional Distress – All Defendants)

95. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

96. Defendants acts and omissions described above were careless and demonstrated a reckless disregard for socially tolerable behavior.

97. Defendants extreme and outrageous behavior described above caused Plaintiff severe emotional and/or physical distress.

98. Plaintiff's severe mental and/or emotional distress caused by Defendants extreme and outrageous conduct was foreseeable.

99. Defendants negligent acts and omissions, in fact, caused Plaintiff severe mental or emotional distress.

100. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were employees and/or actual agents of Defendant NVSD.

101. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were working within the course and scope of their employment and/or actual agency.

102. Defendant NVSD is liable to Plaintiff for the actions of its employees and/or actual agents Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh.

103. As a direct and proximate result of Defendants' acts and omissions, Plaintiff was subjected to severe mental or emotional distress, extreme humiliation, embarrassment, and other highly unpleasant mental or emotional reactions over a prolonged period of time that continues, which has caused and continues to caused non-economic damages in the amount of $250,000.00 or an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

(Violation of First Amendment Rights – All Defendants)

104. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

105. Defendants violated Plaintiff of Plaintiff's constitutional First Amendment Right to familial association.

106. Defendants were acting under the color of state law.

107. Defendants' custodial interference and failure to keep Plaintiff apprised of AJ's location did not serve a compelling state interest.

108. Defendants' custodial interference and failure to keep Plaintiff apprised of AJ's location were not the least restrictive means to safeguarding AJ, even if such action was warranted.

109. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were employees and/or actual agents of Defendant NVSD.

110. At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were working within the course and scope of their employment and/or actual agency.

111. Defendant NVSD is liable to Plaintiff for the actions of its employees and/or actual agents Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh.

112. The Defendants' violation of Plaintiff's First Amendment Rights, was an actual cause of Plaintiff's severe emotional distress, and Plaintiff suffered non-economic damages in the amount of $250,000.00 or an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

(Negligent Hiring and Retention – Defendants NVSD, Wharton, and Richwine)

113. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

114. As the entity charged with vetting and hiring teachers and employees that have direct, and at times one on one supervision of minor students at NHS, Defendants NVSD, Wharton, and Richwine had a duty to use reasonable care in the hiring of employees because it is foreseeable that employees, in carrying out their employment, may pose an unreasonable risk of injury to the minor students.

115. At the time Defendants NVSD, Wharton, and Richwine hired Defendant Hoogendijk, Defendants NVSD, Wharton, and Richwine knew or should have known that

Defendant Hoogendijk was not suited to safely supervise minor students and that his propensity for reckless and dangerous conduct created a foreseeable risk of harm to Plaintiff's daughter.

116. On information and belief, Defendants NVSD, Wharton, and Richwine failed to investigate complaints and information after Defendant Hoogendijk's hiring suggesting Defendant Hoogendijk's employment should not continue. Defendants NVSD and Wharton have shown a pattern of negligent hiring practices that have led to several incidents where students' and parents' well-being has been compromised, including here to Plaintiff.

117. Defendants NVSD, Wharton, and Richwine have shown a propensity for negligent hiring given the unreasonable number of employees, as explained above, that have been charged or convicted of criminal activity towards minor students under their supervision.

118. Defendants NVSD, Wharton, and Richwine were negligent in hiring and retaining Defendant Hoogendijk in light of these facts, and in failing to implement policies to adequately screen new hires and otherwise prevent sexually deviant individuals from becoming employed.

119. Defendant NVSD's, Wharton's, and Richwine's extreme and dangerous conduct caused Plaintiff severe emotional and physical distress. The injuries to Plaintiff caused by Defendants NVSD, Wharton, and Richwine, by and through their employees' extreme and outrageous conduct, was foreseeable.

120. Defendants NVSD, Wharton, and Richwine were negligent in failing to take the necessary precautions in hiring and retention of employees to ensure the legally protected interest of Plaintiff, as the parent of a child entrusted to the public schools, of being free from emotional trauma caused by Defendants NVSD, Wharton and Richwine acts and omissions as well as trusting that pedophiles would be screened out of employment in the public schools their children attend.

121. Plaintiff's interest in being free from negligently caused emotional trauma from Defendant NVSD's, Wharton's, and Richwine's, hiring and retention practices is an interest of sufficient importance as a matter of public policy to merit protection from emotional impact

122. Plaintiff, is a member of the class of individuals to be protected by reasonable hiring and retention practices and policies, in addition to proper supervision.

123. At all times during the NVSD Custodial Interference, Defendants Wharton and Richwine were employees and/or actual agents of Defendant NVSD.

124. At all times during the NVSD Custodial Interference, Defendants Wharton, and Richwine were working within the course and scope of their employment and/or actual agency.

125. Defendant NVSD is liable to Plaintiff for the actions of its employees and/or actual agents Defendants Wharton and Richwine.

126. As a result of Defendants NVSD's and Wharton's negligent hiring policies, Plaintiff was subjected to pain and suffering, extreme humiliation, embarrassment, mental anguish, and other highly unpleasant mental or emotional reactions lasting over a prolonged period of time. Said injuries have caused Plaintiff to be non-economically damaged in the amount of $250,000.00 or an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Declaratory Relief - ORS 28.010 *et seq.* – Defendants NVSD and Wharton)

127. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

128. Pursuant to ORS 28.010 et seq., this Court has the "power to declare rights, status, and other legal relations, whether or not further relief is or could be granted."

129. Plaintiff has no plain, speedy, or adequate remedy at law.

130. Defendants NVSD and Wharton are continuing to prohibit Plaintiff from volunteer coaching with the NHS Football Team supposedly based on the Plaintiff's reasonable reactions to the Defendants' tortious conduct outlined above and false premises of fact concerning Plaintiff's approval to be a volunteer football coach as authorized by Defendants NVSD and Wharton.

131. Defendants NVSD and Wharton have cited to various reasons for continuing this prohibition, many of which have been proven to be patently false.

132. There now exists a ripe, substantial, and justiciable controversy because of Defendants' continued prohibition of Plaintiff from volunteer coaching.

133. Declarations by the Court on Plaintiff's requests and contentions will resolve the controversy between the parties and eliminate uncertainty as to the rights of the parties.

134. By Defendants' continued and unreasonable prohibition on Plaintiff's volunteer coaching, Plaintiff has suffered and will continue to suffer injury in Plaintiff's reputation in the community and in the personal enjoyment of mentoring and teaching young athletes with the considerable, unique, and acknowledged expertise developed over the course of Plaintiff's football career.

135. As volunteer coaching is a means to gain experience, a necessary predicate to obtaining paid coaching positions and/or coaching positions with more permanent authority and responsibility, Defendants unreasonable prohibition on Plaintiff's volunteer coaching, in such a small community with limited opportunities, prevents Plaintiff from advancing in his coaching career.

136. Plaintiff is entitled to a judgment declaring the following:
   a. The prohibition on Plaintiff's volunteer coaching activities was improperly and illegally imposed;
   b. The Plaintiff's clearance for volunteer coaching with the football team and for any other school activities is hereby reinstated; and,
   c. Any other declarations the Court would deem appropriate and helpful given the facts, circumstances, and issues in this case.

## SEVENTH CAUSE OF ACTION

(Violation of Fourteenth Amendment Rights – 42 U.S.C. §1983 – All Defendants)

137. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs listed above.

138. Defendants' acts and omission violated Plaintiff's Fourteenth Amendment substantive due process right to familial integrity.

139.  Defendants, as employees of NVSD, are state actors.

140.  Defendants' custodial interference, as described above, was not based on a reasonable investigation of AJ's safety nor upon a reasonable presumption that "not feeling safe to shar her feelings" somehow rose to the level of a danger to AJ's physical safety and well-being.

141.  Defendants did not have reasonable or articulable evidence giving rise to a reasonable suspicion of abuse, imminent abuse, or that Plaintiff's custody and knowledge of AJ's location somehow represented a threat to AJ's safety.

142.  Defendants' failure to keep Plaintiff apprised of AJ's location was not narrowly tailored to achieve the goal of safeguarding AJ's safety.

143.  Defendants' acts and omissions, including Defendants' consultation with the non-custodial parent, were so egregious and outrageous that the acts and omissions shock the contemporary conscience.

144.  At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were employees and/or actual agents of Defendant NVSD.

145.  At all times during the NVSD Custodial Interference, Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh were working within the course and scope of their employment and/or actual agency.

146.  Defendant NVSD is liable to Plaintiff for the actions of its employees and/or actual agents Defendants Wharton, Richwine, Hoogendijk, Gutierrez, and Winesburgh.

147.  The Defendants' violation of Plaintiff's Fourteenth Amendment Rights, was an actual cause of Plaintiff's severe emotional distress, and Plaintiff suffered non-economic damages in the amount of $250,000.00 or an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

148.  Plaintiff hereby demands trial by jury of all issues so triable that are raised herein or which hereafter may be raised in this action.

\*\*\*\*\*\*\*

WHEREFORE, Plaintiff prays for a money judgment against Defendants as follows:

1. As to Plaintiff's First Cause of Action, judgment against Defendants in the amount of $250,000.00; together with prejudgment interest at the highest statutory rate;

2. As to Plaintiff's Second Cause of Action, judgment against Defendants in the amount of $250,000.00; together with prejudgment interest at the highest statutory rate;

3. As to Plaintiff's Third Cause of Action, judgment against Defendants in the amount of $250,000.00; together with prejudgment interest at the highest statutory rate;

4. As to Plaintiff's Fourth Cause of Action, judgment against Defendants in the amount of $250,000.00; together with prejudgment interest at the highest statutory rate;

5. As to Plaintiff's Fifth Cause of Action, judgment against Defendants in the amount of $250,000.00; together with prejudgment interest at the highest statutory rate;

6. As to Plaintiff's Sixth Cause of Action, a declaratory judgment stating:
    a. The prohibition on Plaintiff's volunteer coaching activities was improperly and illegally imposed;
    b. The Plaintiff's clearance for volunteer coaching with the football team and for any other school activities is hereby reinstated.
    c. Any other declarations the Court would deem appropriate and helpful given the facts, circumstances, and issues in this case.

7. As to Plaintiff's Seventh Cause of Action, judgment against Defendants in the amount of $250,000.00; together with prejudgment interest at the highest statutory rate;

8. With regard to Plaintiff's First through Fifth and Seventh Causes of Action, an award of post-judgment interest at the highest statutory rate from the date of the judgment until paid;

9. With regard to Plaintiff's First Cause of Action, an award of punitive damages, pursuant to ORS 30.868(10);

10. With regard to Plaintiff's First Cause of Action, an award of all costs and disbursements, including attorney fees incurred in this proceeding, pursuant to ORS 30.868(10);

11. With regard to Plaintiff's Fourth and Seventh Causes of Action, an award of all costs and disbursements, including attorney fees incurred in this proceeding, pursuant to 42 U.S.C. §1988(b);

12. With regard to all remaining claims, an award of all costs and disbursements, including attorney fees incurred in this proceeding, pursuant to ORS 20.105;

13. An award of a prevailing party fee under ORS 20.190(2); and,

14. Such additional relief as the Court may deem just, equitable, and appropriate.

RESPECTFULLY SUBMITTED this 15th day of May, 2025.

*/s/ Charles W. Woodward, IV*
Charles W. Woodward, IV, OSB No. 165001
London & Paris LLP
66 Club Rd., Ste. 200
Eugene, OR 97402
Tel: 971.206.4384
charles@londonparislaw.com
*Of Attorneys for Plaintiff*