IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY JOHNS, an individual,

        Plaintiff,

v.

NESTUCCA VALLEY SCHOOL DISTRICT,
a public body, et al.,

        Defendants.

Case No. 3:25-cv-00850-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Defendants Nestucca Valley School District, Misty Wharton, Brian Hoogendijk, Daniela Moreno Gutierrez, Kenneth Richwine, and Cristal Winesburgh move to dismiss plaintiff Kimberly Johns's complaint pursuant to Fed. R. Civ. P. 12(b)(6). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons stated below, defendants' motion is granted in part and denied in part.

Page 1 – OPINION AND ORDER

BACKGROUND

At all relevant times, plaintiff was the custodial parent of AJ, "an unemancipated minor female" participating in her senior year at Nestucca High School ("NHS") in the Nestucca Valley School District ("NVSD"). Compl. ¶¶ 3, 12-13 (doc. 1).

On January 22, 2024, a dispute arose between plaintiff and AJ after school, and AJ "informed Plaintiff that she no longer felt safe around [him]." *Id.* at ¶ 16. Plaintiff "allowed AJ to leave the family home with two of her classmates with the understanding that AJ would be staying with a particular friend that night." *Id.* at ¶ 17.

On January 23, 2024, Hoogendijk and Gutierrez, both NVSD employees, went to plaintiff's house. *Id.* at ¶ 18. Hoogendijk "enter[ed] Plaintiff's home and remove[d] some of AJ's belongings." *Id.* at ¶ 21. AJ also arrived at the property and returned plaintiff's vehicle, which she had been driving. *Id.* at ¶ 20. Hoogendijk and Gutierrez then drove away with AJ in an "NVSD vehicle to an undisclosed location." *Id.* at ¶ 22. At that time, AJ "blocked her location on her phone such that Plaintiff no longer had the ability to know where AJ, or at least AJ's phone, was located." *Id.* at ¶ 23.

On January 24, 2024, at 8:36 a.m., plaintiff called and left a voicemail for Wharton, the NVSD superintendent. *Id.* at ¶ 24. At 9:00 a.m., plaintiff called the Oregon Elderly Abuse Hotline "reporting that AJ had been removed from his home by a public agency other than the Oregon Department of Human Services ('DHS') or law enforcement." *Id.* at ¶ 25. At 12:10 p.m., plaintiff "filed a report with the Tillamook County Sheriff's Office." *Id.* at ¶ 26. At 5:16 p.m., plaintiff "called the non-emergency 911 line to report AJ missing and to upgrade the previously filed report to runaway status." *Id.* at ¶ 27.

On January 25, 2024, at 1:52 p.m., a Tillamook County sheriff's deputy called plaintiff and told him that Richwine, an NVSD employee, and Andrea Wanitschek, a DHS caseworker, would be reaching out. *Id.* at ¶¶ 7, 29. The sheriff's deputy also explained that "Wharton was still trying to catch up [and] was unaware of the 'incident.'" *Id.* At 2:35 p.m., "Richwine [called plaintiff but] declined to provide . . . AJ's location nor whether AJ was in school that day." *Id.* at ¶ 30.

On January 26, 2024, at 10:18 a.m., plaintiff left a voicemail for Wanitschek explaining that he did not know AJ's location. *Id.* at ¶ 31. Plaintiff also left a voicemail for a sheriff's detective asking for a return call. *Id.* at ¶ 32. At 11:35 a.m., a Tillamook County sheriff's deputy informed plaintiff that Wanitschek would follow-up shortly. *Id.* at ¶ 34. "Plaintiff called the Federal Bureau of Investigation to file a kidnapping report" around 12:00 p.m. *Id.* at ¶ 35. Less than thirty minutes later, Wanitschek called plaintiff and gave him the address of Winesburgh, an NHS teacher, stating AJ was staying with her and that both AJ and Winesburgh had been "instructed to call Plaintiff to provide AJ's location and a plan for her future location." *Id.* at ¶¶ 36-37.

That evening, plaintiff's sister went to an NHS basketball game, at which AJ was present. *Id.* at ¶ 39. At 7:53 p.m. plaintiff's sister "confronted" AJ, and spoke with Wharton and Winesburgh. *Id.* Wharton told plaintiff's sister that "school officials had spoken with AJ's non-custodial parent and arranged for [AJ's friend] to transport AJ to the non-custodial parent for visitation." *Id.* at ¶ 40. At 9:49 p.m., a Tillamook County sheriff's deputy spoke with plaintiff "asserting that the parenting plan for AJ allows for weekend visitation to the non-custodial parent." *Id.* at ¶ 41. Plaintiff responded: "the parenting plan only allows for AJ to drive herself or for the parents to meet halfway, there are no provisions for NVSD staff to coordinate with the non-custodial parent for anything regarding AJ, especially transportation and lodging without the knowledge and consent of Plaintiff." *Id.* at ¶ 42.

Page 3 – OPINION AND ORDER

On January 29, 2024, plaintiff filed complaints with the Teacher Standards and Practices Commission against Hoogendijk, Winesburgh, and Gutierrez. *Id.* at ¶ 43.

On January 31, 2025, DHS completed its investigation "concluding . . . that when AJ stated she felt 'unsafe' around Plaintiff, she was referring to feeling unsafe to 'share her feelings,' that AJ was never in any danger of neglect or abuse, and that no threat to her safety existed nor was there a threat to her safety in the immediate future." *Id.* at ¶ 44.

On February 22, 2024, Wharton, on behalf of the NVSD, sent plaintiff a letter "revoking [his] volunteer clearance for coaching,[1] prohibiting [him] from attending any NVSD events, and prohibiting [him] from entering upon the premises of any NVSD property." *Id.* at ¶ 45.

On March 12, 2024, plaintiff "filed a Discrimination Complaint with the Northwest Regional Service District ('NRESD')" against Richwine and Wharton. *Id.* at ¶ 50.

On May 9, 2024, "Hoogendijk was charged with eight (8) counts of sexual abuse of a minor who was a student of his at NHS." *Id.* at ¶ 61.

On June 6, 2024, the NRESD issued a report stating that "NVSD and Plaintiff should work together to resolve the issues such that Plaintiff could attend . . . AJ's graduation." *Id.* at ¶ 53. However, this report was not provided to plaintiff until August 29, 2024, well after AJ had graduated. *Id.* at ¶¶ 54-55.

On May 19, 2025, plaintiff initiated this action alleging the following claims: (1) custodial interference under Or. Rev. Stat. § 30.868; (2) negligent infliction of emotional distress ("NIED"); (3) negligent hiring and retention; (4) intentional infliction of emotional distress ("IIED"); (5) declaratory relief under Or. Rev. Stat. § 28.010; (6) violation of the First Amendment right to

---

[1] Plaintiff was a volunteer football coach with the NHS football program from October 18, 2021, through February 22, 2024. Compl. ¶ 57 (doc. 1). He had previously been a kicker at Oregon State University. *Id.* at ¶ 58.

Page 4 – OPINION AND ORDER

familial association under 42 U.S.C. § 1983; and (7) violation of the Fourteenth Amendment right to familial integrity under 42 U.S.C. § 1983.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

Defendants argue that dismissal is warranted in regard to plaintiff's claim under Or. Rev. Stat. § 30.868 because they "did not violate ORS 163.257" – the criminal statute surrounding custodial interference. Defs.' Mot. Dismiss 4 (doc. 14). Concerning plaintiff's negligence-based claims, defendants assert that the complaint neglects to plead the requisite special relationship. Defendants additionally argue that plaintiff cannot establish a transgression of socially tolerable conduct for the purposes of plausibly alleging IIED. According to defendants, plaintiff's declaratory relief claim fails because there is no "'right' to be a volunteer football coach" and plaintiff does not identify any other "law, ordinance, or statute." *Id.* at 10. Finally, defendants

Page 5 – OPINION AND ORDER

contend plaintiff's 42 U.S.C. § 1983 claims must be dismissed because they "are not state actors." *Id.* at 12.

I. **Custodial Interference Claim**

Under Or. Rev. Stat. § 30.868, a person

> may bring a civil action to secure damages against any and all persons whose actions are unlawful under ORS 163.257(1)(a): (a) A person who is 18 years of age or older and who has been taken, enticed or kept in violation of ORS 163.257(1)(a); or (b) A person whose custodial rights have been interfered with if, by reason of the interference: (A) The person has reasonably and in good faith reported a person missing to any city, county or state police agency; or (B) A defendant in the action has been charged with a violation of ORS 163.257(1)(a).

Section 163.257, in turn, provides:

> (1) A person commits the crime of custodial interference in the first degree if the person violates ORS 163.245 (custodial interference in the second degree) and: (a) Causes the person taken, enticed or kept from the lawful custodian or in violation of a valid joint custody order to be removed from the state; or (b) Exposes that person to a substantial risk of illness or physical injury.

A "person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian or in violation of a valid joint custody order with intent to hold the other person permanently or for a protracted period." Or. Rev. Stat. § 163.245.

The complaint fails to plead any facts demonstrating that defendant's "actions are unlawful under ORS 163.257(1)(a)" or otherwise violate Or. Rev. Stat. § 163.245. Indeed, as defendants denote, "[t]here is no allegation that the daughter was removed from the state, much less that [they] did so." Defs.' Mot. Dismiss 4 (doc. 14). Likewise, the complaint does not plead any facts demonstrating AJ was exposed "to a substantial risk of illness or physical injury" or that defendants "inten[ded] to hold [AJ] permanently or for a protracted period." Or. Rev. Stat. §§ 163.245, 163.257(1)(a).

Page 6 – OPINION AND ORDER

Plaintiff's briefing glosses over the plain language of these statutes, and instead focuses on the existence of a "valid custody order" and defendants' purported interference therewith. Pl.'s Resp. to Mot. Dismiss 3-4 (doc. 18); *see also Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Significantly, plaintiff has not cited to, and the Court is not aware of, any authority allowing a custodial interference claim to proceed under analogous circumstances. Defendants' motion is granted in this regard.

## II.    Negligence-Based Claims

It is undisputed that, in order to proceed with a negligence-based claim in the present context, plaintiff must allege the existence of a special relationship. Defs.' Mot. Dismiss 7 (doc. 14); Pl.'s Resp. to Mot. Dismiss 6-8 (doc. 18). It is well-established under Oregon law that "there is no special relationship between a public school and a student's parent." *Achcar-Winkels v. Lake Oswego Sch. Dist.*, 2017 WL 2291338, *4 (D. Or. May 25, 2017); *see also T.L. ex rel. Lowry v. Sherwood Charter Sch.* ("*Lowry I*"), 68 F.Supp.3d 1295, 1321-22 (D. Or. 2014), *aff'd*, 691 Fed.Appx. 310 (9th Cir. 2017) ("as a matter of law, Oregon courts have not, and would not, recognize a special relationship between a public charter school and a student's parent").

Moreover, plaintiff's reliance on *Shin v. Sunriver Preparatory Sch.*, Inc., 199 Or.App. 352, 111 P.3d 762 (2005), as support for the proposition that defendants have "a duty to avoid psychological harm to parents when assuming temporary custody of the child for educational purposes" is misplaced. Pl.'s Resp. to Mot. Dismiss 7 (doc. 18). *Shin* held that a special relationship existed between a student and the defendant school (as opposed to between a parent and the defendant school), where that school "was not at all like a typical high school; it was, in the words

Page 7 – OPINION AND ORDER

of its president, a boarding school that acted in the parental role for plaintiff." *Shin*, 199 Or.App. at 367-69 (internal quotations and brackets omitted). Here, in contrast, there are no well-plead facts from which the Court could infer NHS operated more akin to a boarding school than a typical high school. *See Lowry I*, 68 F.Supp.3d at 1322 ("*Shin* concerned [a] unique educational environment" such that it is inapplicable where the plaintiff identifies no facts "distinguishing [the defendant school] from a typical public school"). Defendants' motion is granted as to plaintiff's negligent hiring/retention and NIED claims.

### III.  IIED Claim

To state an IIED claim, a plaintiff must allege: "(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct, i.e., conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress." *House v. Hicks*, 218 Or.App. 348, 357-58, 179 P.3d 730 (2008) (citation omitted).

In regard to the second element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 358 (citation and internal quotations omitted). While "the inquiry is fact-specific, the question of whether the defendant's conduct exceeded the farthest reaches of socially tolerable behavior" is, initially, "a question of law" for the court. *Gordon v. Kleinfelder W., Inc.*, 2012 WL 844200, *14 (D. Or. Mar. 12, 2012) (citation and internal quotations omitted).

There are "several contextual factors that guide the court's classification of conduct as extreme and outrageous." *House*, 218 Or.App. at 360. "The most important factor is whether a

special relationship exists between a plaintiff and a defendant." *Id.*; *see also Delaney v. Clifton,* 180 Or.App. 119, 131 n.7, 41 P.3d 1099, *rev. denied*, 334 Or. 631, 54 P.3d 1041 (2002) ("a special relationship has been alleged in almost all successfully pleaded [IIED] claims"). "Other factors include whether the conduct was undertaken with an ulterior motive or to take advantage of an unusually vulnerable individual [and the] setting in which the conduct occurs." *House,* 218 Or.App. at 360.

The complaint identifies three events that allegedly constitute IIED: (1) "failing to act to allow Plaintiff to attend his daughter's once in a lifetime event, her high school graduation," (2) "continuing to keep Plaintiff from volunteer coaching the football team," and (3) "through the above-described custodial interference." Compl. ¶ 89 (doc. 1).

Concerning the first two circumstances, although the Court certainly understands plaintiff's frustration, "[a parent] possesses no substantive due process right to access school property, regardless of the purpose of his intended visit." *T.L. ex. Re. Lowry v. Sherwood Charter Sch.* ("*Lowry II*"), 2014 WL 897123, *4 (D. Or. Mar. 6, 2014), *aff'd*, 691 Fed.Appx. 310 (9th Cir. 2017). By extension, a parent's "prohibit[ion] from the school campus," even in the presence of other allegedly aggravating circumstances, is insufficient to establish an IIED claim. *Id.* at *10-12.

Regarding the third circumstance, as discussed in Section II, no special relationship exists between plaintiff and NHS/NVSD. The particular facts and circumstances of this case also counsel against plaintiff's IIED claim. In particular, AJ was a senior in high school and on the precipice of turning eighteen. Compl. ¶¶ 12-13, 16 (doc. 1). She could drive and had her own cell phone. *Id.* at ¶¶ 20, 23. The relationship between plaintiff and AJ was admittedly strained: AJ communicated to plaintiff that "she no longer felt safe around [him]," and then subsequently left the family home in her own transportation, communicated with and/or sought help from NHS/NVSD employees,

blocked plaintiff from accessing her location via her cellphone, and refused to communicate with him for three days. *Id.* at ¶¶ 16-17, 20-38 (doc. 1). And, despite staying with an NHS teacher during that time period, defendants did not appear to be dictating AJ's movements or actions, insofar as AJ attended a school basketball game and communicated with friends. *See, e.g.*, *id.* at ¶¶ 37, 39.

Thus, while plaintiff concludes defendants "t[ook] and entice[d] AJ to leave [his] custody," the well-plead facts suggest otherwise. *Id.* at ¶ 19; *see also Delaney*, 180 Or.App. at 130-33 ("the lack of [a special] relationship generally defeats a conclusion that the conduct is actionable" and indicating that, where a third-party is asserting an IIED claim, "[a]t a minimum . . . the conduct should be outrageous as to the [individual with the direct relationship with the defendant]"). *Ashcroft*, 556 U.S. at 680-82 (an allegation is not plausible where there is an "obvious alternative explanation" for the alleged misconduct). Defendants' motion is granted as to this claim.

### IV. Declaratory Relief Claim

To state a plausible declaratory relief claim under Or. Rev. Stat. § 28.010 *et seq.*, the plaintiff must allege facts demonstrating (1) they are a "person" and have "some right, status or other legal relation that is affected by the challenged provision"; (2) "the identified rights, status, or other legal relations are affected by the targeted statute or provision"; and (3) "the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate." *Foote v. State*, 364 Or. 558, 562-63, 437 P.3d 221 (2019) (citations and internal quotations omitted). In regard to the first element, the "right, status or other legal relation" must be "legally recognized— that is, recognized under some statute, constitutional provision, regulation, local ordinance, or historical or evolving principle of common law." *Id.* at 563 (citation and internal quotations omitted). Concerning the second element, the "effect of the targeted statute or provision must be real or probable, not hypothetical or speculative." *Id.* (citation and internal quotations omitted).

Page 10 – OPINION AND ORDER

Here, plaintiff has not cited to, and the Court is not aware of, any legally recognized right or status in relation to volunteer coaching activities. Plaintiff asserts he "has suffered and will continue to suffer injury in [his] reputation in the community and in the personal enjoyment of mentoring and teaching young athletes." Compl. ¶ 134 (doc. 1). Yet, in the absence of any legally recognized right or status in volunteer coaching, this allegation asserts only an abstract interest that is not actionable. *Cf. Foote*, 364 Or. at 565 (the plaintiff's lacked standing to pursue a claim under Or. Rev. Stat. § 28.010 *et seq.* where the asserted interest was not "even arguably distinct from the abstract interest in the correct application or the validity of a law that any other voter in the state might have"). And, while plaintiff contends the prohibition on his volunteer coaching "prevents [him] from advancing in his coaching career," the complaint alleges no facts to support the conclusion that his future interests are probable and not speculative. Compl. ¶ 135 (doc. 1). Defendants' motion is granted as to plaintiff's declaratory relief claim.

V.     **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege facts demonstrating: (1) defendant's conduct deprived him of an existing constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

As an initial matter, defendants' sole argument for dismissal is that the individual NHS/NVSD employees are not state actors. *See generally* Defs.' Mot. Dismiss (doc. 14). Yet caselaw makes clear that public school officials and employees generally are "state actors" for the purposes of 42 U.S.C. § 1983. *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969); *see also* Pl.'s Resp. to Mot. Dismiss 11 (doc. 18) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985)).

Page 11 – OPINION AND ORDER

Defendants implicitly acknowledge as much insofar as they abandon this argument in their reply brief and instead assert for the first time that plaintiff's § 1983 claims fail because he "allowed Defendants to take [AJ] away and place her in a temporary home." *See* Defs.' Reply to Mot. Dismiss 6 (doc. 19) ("[p]laintiff may be correct that Defendants are state actors [but what he] has not alleged is that his daughter was taken by the 'state' without his consent"). For this reason, alone, defendants' motion is denied as to plaintiff's federal claims. *See Carstarphen v. Milsner*, 594 F.Supp.2d 1201, 1204 n.1 (D. Nev. 2009) (district courts need not address "the merits of issues first raised in a reply, as the opposing party is not afforded any opportunity to respond") (citing *United States v. Bohn,* 956 F.2d 208, 209 (9th Cir. 1992)).

Further, to state a claim in this context, "a plaintiff must establish both 1) that the government intentionally engaged in conduct that interfered with plaintiff's protected liberty interest and 2) the government conduct shock[s] the conscience or offend[s] the community's sense of fair play and decency." *Ash v. Deschutes Cnty.*, 2014 WL 3896053, *4 (D. Or. Aug. 6, 2014) (citation and internal quotations omitted).

It is undisputed that plaintiff has a liberty interest at stake here. *See* Defs.' Reply to Mot. Dismiss 6 (doc. 19) (acknowledging that the right to familial association extends to circumstances "where state officials remove children from parents without consent or due process"); *see also Keates v. Koile*, 883 F.3d 1228, 1237-38 (9th Cir. 2018) (recognizing a right to familial association under the First and Fourteenth Amendments).

Turning to the second element, the complaint expressly alleges that NHS/NVSD employees failed to inform plaintiff of AJ's location, even after being instructed by law enforcement to do so. *See, e.g.*, Compl. ¶¶ 29-38 (doc. 1). The complaint also plausibly alleges that NHS/NVSD employees housed AJ without his knowledge or authorization. While defendants

characterize plaintiff as essentially sanctioning their actions, it is impossible to reasonably read the well-plead facts as indicating consent. Indeed, the complaint details no fewer than six calls to various agencies (including federal and local law enforcement) over a two-day period, seeking information about the whereabouts of AJ and/or assistance with her return. *Id.* at ¶¶ 24-38.

At least one court within this District has found analogous facts sufficient to state a claim under 42 U.S.C. § 1983, explaining that "the proof at trial or summary judgment will ultimately determine whether the alleged deprivation of that interest rises to the level of a federal constitutional violation. Whether facts develop to support a 'shocks the conscience' standard or something that no reasonable juror would be shocked by must await discovery." *Hollander v. Rainier Sch. Dist.*, 2013 WL 1193888, *1-2, 9 (D. Or. Mar. 22, 2013). For this additional reason, defendants' motion is denied as to plaintiff's § 1983 claims.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss (doc. 14) is granted as to plaintiff's state law claims and denied in all other respects. Defendants' request for oral argument is denied as unnecessary. Any motion to amend the complaint must conform with this Opinion and Order and be filed within 30 days.

IT IS SO ORDERED.

DATED this 20th day of October, 2025.

        /s/ Jolie A. Russo
        Jolie A. Russo
    United States Magistrate Judge